Kiley v. The City of Kansas.

2. ——: fraudulent in part, fraudulent in toto.

3. ——: no laches.

AFFIRMED.

KILEY, *Plaintiff in Error*, v. THE CITY OF KANSAS.

**A City Authorized to abate Nuisances is Liable for Failure to Exercise the Power.** If the authorities of a city which is authorized by its charter to declare and abate nuisances, and which has by general ordinance declared all buildings and structures dangerous to the public to be nuisances, after becoming aware of the dangerous condition of a decayed wall situated so near to a street as to imperil the lives of persons passing by on the street, neglect to cause its removal, and a child is crushed to death by the falling of the wall, the city will be held liable in damages, and this, though the wall stood on private property and the child, at the time of the fall, was not in the street, but was on private property within one foot of the street.

*Error to Jackson Circuit Court.*—Hon. Saml. L. Sawyer, Judge.

*Tichenor & Warner* for plaintiff in error.

The city had ample power by its charter to define what should be deemed a nuisance, and to abate and remove the same. Laws 1870, p. 333; and it is liable for a failure to exercise this power. Wood on Nuisances, § 744. If this wall had been standing in the street and had fallen so as to kill one who was in the street, and one just outside of it, could there be a recovery in one case and not in the other? Certainly not. The question would be, were these persons killed because of neglect of duty on part of the city, and not, where were they standing when killed by such neglect of duty. Again, if this wall, situated where it was, had fallen so as to kill one traveling in the street, there could be a recovery, because, under its charter, it had exclusive control and management of its streets, and it was its duty to keep them in a safe condition. Sess. Acts 1870, p. 333; *Blake v. City*, 40 Mo. 570; *Bassett v. City*, 53 Mo. 290; *Hull v. City*, 54 Mo. 598. If by the fall another, also, had been killed, standing just outside of the street, would not the cause of his death have been just the same, to-wit: the neglect of duty on part of the city. See *Parker v. Macon*, 39 Ga. 725.

*J. Brumback* for defendant in error.

On the facts stated in the petition the city is not liable because the power to define the wall a nuisance, and to provide for abatement of such nuisance is legislative, governmental and exercisable for the public good. It is not a power to be used by the city as a proprietor, or for private gain or advantage, as if it were a private corporation. Dillon on Munic. Corp., §§ 39, 754; *Peck v. Austin*, 22 Texas 261; *Murtagh v. St. Louis*, 44 Mo. 481; *Heiler v. Sedalia*, 53 Mo. 160; *Grant v. Erie*, 69 Pa. St. 420; *Wheeler*

*v. Cincinnati*, 19 Ohio St. 19 ; Shearman & Redfield on Neg.
§ 153 ; *Levy v. New York*, 1 Sandf. Sup. Ct. 465 ; *Griffin v.
New York*, 9 N. Y. 459 ; *Lorillard v. Monroe*, 11 N. Y. 396 ;
*Western College v. Cleveland*, 12 Ohio St. 377 ; *Kelley v. Mil-
waukee*, 18 Wis. 84 ; *Goodrich v. Chicago*, 20 Ill. 445 ; *Jewett
v. New Haven*, 38 Conn. 396 ; *Hilsdorf v. St. Louis*, 45 Mo.
95 ; *Hill v. Charlotte*, 72 N. C. 55 ; *s. c.*, 21 Am. Rep. 451 ;
*Howe v. New Orleans*, 12 La. Ann. 481 ; *Kennedy v. New
Orleans*, 10 La. Ann. 227 ; *Hixon v. Lowell*, 13 Gray 61 ;
*Jones v. Boston*, 104 Mass. 76 ; *Hewison v. New Haven*, 34
Conn. 136 ; *Hafford v. New Bedford*, 16 Gray 297 ; *Fisher v.
Boston*, 104 Mass. 93.

The claim to recover is bottomed on the failure of the
city to abate an alleged nuisance on the land not owned
or controlled by it. What can respondent rightfully do
under the charter in such cases? The petition merely dis-
closes that there is an ordinance declaring all buildings or
structures, dangerous to the public, nuisances. It does not
appear, whether or not, there is any provision contemplat-
ing proceedings to obtain a judicial decision, that any par-
ticular structure, being on private property, is a nuisance
within the ordinance, and directing an abatement after
such decision, according to the well known course of law.
It is clear that the ordinance would not, without such pro-
visions, be good to warrant abatement by the city. The
council cannot exercise judicial power, and by ordinance
declare any particular structure, or class of structures, on
land of its citizens, a nuisance, and have a summary abate-
ment without more. Whether any structure so situated is
a nuisance, is a judicial question, to be decided by some
tribunal, on notice to the owner, before he can be bound,
or his property affected, or before any one injured for fail-
ure to abate can, if ever, claim redress against the city.
*Yates v. Milwaukee*, 10 Wall. 505 ; *Lake View v. Letz*, 44 Ill.
82 ; Dillon Munic. Cor., § 308 ; *Cleveland v. Lenze*, 27 Ohio
St. 385. A private individual cannot abate a private or
public nuisance, except so far as it may be necessary to

enable him to enjoy or exercise his own right. If those whose rights are not directly affected by the existence of such a nuisance, abate the same, they are liable in damages to the person suffering therefrom. *Brown v. Perkins*, 12 Gray 101. This principle prohibited the city from summarily abating the nuisance for the benefit of adjoining private property, and the child thereon. The power given by the charter to abate nuisances summarily, when exerted without judicial proceedings, must be confined to cases where, by common law, a private person may abate a nuisance. In all other cases there must be a judicial finding of the fact of nuisance, to warrant an abatement, which must then be according to the course of law, though summary. The power to define nuisances is simply legislative, and after its exercise the usual forms of law must be observed in laying the ground to abate, and, in abating, at least in the case of nuisances on land not owned by the city, there must be some judgment to abate. No one can have damages for failure of the city to abate summarily, without judicial proceedings, such a nuisance. Such abatement would be illegal. The duty to abate summarily does not arise merely because the city exercised its legislative power to define a nuisance. The duty to institute judicial proceedings to have the wall adjudged a nuisance is not of such character that damages can be recovered for failure to do it. Mrs. Kiley might have instituted such proceedings herself.

NAPTON, J.—As the only question in this case arises on a demurrer to the petition which was sustained, we insert the petition at large:

Plaintiff states that defendant is a municipal corporation, created by the laws of the State of Missouri, and that defendant is, and was, at the time of the hereinafter grievance, a populous city ; that, by its charter, defendant is empowered to abate all nuisances within the city, that are dangerous to the public, and that the defendant has the

right and authority to define what constitutes a dangerous public nuisance within its limits; that, by chapter 20 of "An ordinance in revision of the ordinances governing the city," approved October 14th, 1871, it is ordained, among other things, that all buildings and structures in a situation or manner dangerous to the public, are declared to be nuisances, and plaintiff alleges that it is defendant's duty to abate all nuisances, within its limits, of a character dangerous to the public.

Plaintiff says, that at the time of the hereinafter mentioned grievance, she was, and now is, a widow, her husband being dead, and that at said time she resided in the town of Harlem, Clay county, Missouri, and that her daughter, Maggie Kiley, whose death occurred as hereinafter stated, lived with plaintiff, and that her said daughter, Maggie, was a minor, of the age of fourteen years; that from and after the 19th day of December, 1872, and continuously from that date until the 9th day of February, 1873, defendant negligently and carelessly permitted and suffered an insecure and dangerous wall, the same being about forty feet high, the remains of a brick building, to stand and remain on part of lot No. 86, in Swope's addition to said city, being at or near the corner of 12th street and Grand Avenue, streets of defendant, and the same being a locality much frequented by the public; that said brick wall was liable at any time, during the period aforesaid, to fall down on, over and upon, persons passing along the west side of Grand Avenue street, and thereby injure them; and that during all of said time defendant well knew the dangerous condition of said wall; that said brick wall, so permitted to stand and remain as aforesaid, was, at the time plaintiff's said daughter was killed as hereinbefore stated, and for some time prior thereto, a dangerous public nuisance, the same being liable to fall down and upon persons passing on said street, but that the same was negligently and carelessly permitted to remain in that situation by defendant, and that on the 9th day of February,

1873, while her said daughter, Maggie Kiley, was in a small house adjoining said wall, and while she was standing within one foot of the sidewalk on the west side of said Grand Avenue, and using ordinary care said brick wall fell down on and upon her said daughter, Maggie, and thereby killed her. Plaintiff says she has sustained damages in the sum of $5,000, for which sum and costs she asks judgment in accordance with chapter 147 of the statutes of this State, in such cases made and provided.

It seems from this petition that the charter gave the city legislative power to prevent, abate and remove nuisances, and also to define and declare, by ordinance, what should be deemed nuisances, and it is averred that by an ordinance passed in 1871, it was ordered, among other things, that all buildings and structures in a situation or manner dangerous to the public, should be deemed nuisances. The duty of the city to abate such nuisances as were thus declared dangerous to the public, is averred. The nuisance in this case was a decayed brick wall forty feet high, the remains of a burned building, which had been at the time of its fall standing for two years, at the intersection of two streets. It is alleged that it was a dangerous nuisance to the public, and that plaintiff's daughter was standing within a foot of the sidewalk when the wall fell and killed her.

It is not very easy to perceive upon what grounds this demurrer was sustained. Two objections have been suggested in the argument submitted to this court by the city counselor, which I will proceed to notice. The first is, that this wall was upon a private lot over which the city had no control. But could this fact alter the character of the nuisance and deprive the city of a power expressly conceded to it by its charter? In Wood on Nuisances, § 744, it is said that when a municipal corporation has ample power to remove a nuisance which is injurious to the health, endangers the safety or impairs the convenience of its citizens, or when, in the prosecution of a public work, it creates

a nuisance, it is liable for all injuries resulting from a failure to properly exercise the power possessed by it, and for the injuries resulting from its wrongful acts. The case of *Parker v. Macon City*, 39 Ga. 729, is a decision upon this point. The charter of that city authorized the council to keep the streets in good order, and to remove any obstructions or nuisances, and to keep the streets in a condition that persons could pass them with safety. In that case, as in this, it was insisted that the wall, claimed as a nuisance, which was at the edge of the sidewalk, was on private property, and not in the street. To this objection the court said: " If the city is bound to fill up a pit dug by the edge of the sidewalk, or to fence it off, so that no one may be injured by it, or to remove anything hanging over the sidewalk, which may work injury to the passer-by, why is it not bound to remove a crumbling wall, standing so near the sidewalk as to fall upon it ? In this case the wall was two stories high, and stood exposed to the weather for several months after the house was burned. It was immediately upon the edge of the sidewalk, and could not fall in that direction without falling upon it, and the declaration alleges that it was, from its character and position, insecure and endangered the lives of passengers upon the street. If so, it was a nuisance which it was the duty of the mayor and council to take the necessary steps to abate, and having failed to do so, they are liable for the damages." In the case of *Bassett v. The City of St. Joseph*, the same doctrine was declared by this court. 53 Mo. 290. The plaintiff in that case was precipitated into an excavation on a private lot, and the city was held equally liable, whether the excavation extended into the street or not. Judge Vories observes: " It would not be difficult to imagine many cases in which it would be as much the duty of the city authorties to protect the public, who travel its streets and highways, against dangers which do not actually form part of the street, as it would be to protect them from obstructions or excavations forming a part of the street."

The next objection taken to the petition is, that the child killed by the falling of the wall was not in the street or sidewalk, but was in a building a foot outside of the sidewalk. It is perfectly immaterial what position is occupied by the person injured, if the death is occasioned by the negligence of the city in failing to remove a nuisance. The question in such cases is, whether the injury is occasioned by a public nuisance which it was the duty of the city to remove. Had this wall been standing in the center of a lot or block belonging to a private person, the city may not have been liable for injuries resulting from its fall, but that would be, not because of the particular position of the person injured, but because the wall was not a public nuisance. It would certainly be remarkable that where a wall is just on the edge of a public street in a populous city, and a passer-by on the sidewalk should happen to step off the walk and go behind the wall on the opposite side to the street, or at either end of it, there could be no liability, which it is conceded would have existed had he remained in the street. Such a discrimination it would be difficult to characterize in terms complimentary to the law. The position of the person injured is a matter of no importance. The question is, whether the injury resulted from a neglect of duty on the part of the city, and this depends on the question whether the immediate cause of the injury was a public nuisance. As to the necessity of a previous judicial determination before the city authorities were obliged to act, the charter expressly confides that power to the city, and they had exercised it in this case by declaring the decayed wall a public nuisance. The judgment is reversed and the cause remanded. The other judges concur.

REVERSED.