MARTIN CAIN, as ADMINISTRATOR, ETC., of PATRICK CAIN, DECEASED, APPELLANT, *v.* THE CITY OF SYRACUSE, RESPONDENT.

*Public nuisance — a dangerous wall on private property, remote from a street, is not — power of the common council of a city to abate nuisances and provide for the removal of dangerous buildings — when the city is not liable to one injured by its neglect to exercise such powers.*

On January second a brick building on Genesee street, in the city of Syracuse, was burned. The building extended back from Genesee street to the tow-path of the Erie canal, a distance of about 160 feet. It was from forty-six to fifty feet high, and its eastern wall, which was independent of the wall of the adjoining building, was a foot thick. The roof, joists, flooring, timber and all the supports of the wall were destroyed by fire. The wall remained standing, but it became sprung and gradually bulged towards the east. It was so situated that the wind struck the rear portion of it so forcibly as to cause it to sway. The building adjoining it on the east was of the same height in front but was only twenty-two or twenty-three feet high in the rear, and at one place near the center it was only one story high. At this place was a skylight to light the dining-room of a restaurant on the first floor. On January ninth the rear portion of the wall of the burned building fell, crushed down through the skylight of the restaurant and killed the plaintiff's intestate and several others who were seated there at a table dining.

The charter of the city of Syracuse provided that "the common council shall have power to make, establish, abolish, modify, ordain, amend or repeal ordinances, rules, regulations and by-laws for the following purposes: To abate, destroy and remove nuisances; to control and regulate the manner of erecting brick or stone walls for buildings and the thickness of the same; to prohibit or require the removal of any such as they may deem dangerous to life; to raze or demolish any building or erection which by reason of fire or any cause may become dangerous to human life or health, or may tend to extend a conflagration."

In this action, brought against the city to recover the damages occasioned by the death of the plaintiff's intestate:

*Held,* that as the dangerous wall was remote from the public street it was not a public nuisance.

That the duties of the defendant's common council in deciding as to the removal of dangerous buildings and walls were judicial in their nature, and that the city was not liable to a person injured by its failure to exercise them.

That the plaintiff was not entitled to recover.

APPEAL from a judgment, entered upon the dismissal of plaintiff's complaint at the Onondaga Circuit.

*William C. Ruger*, for the appellant.

*M. A. Knapp*, for the respondent.

HAIGHT, J.:

On the second day of January of the present year, a brick block known as 35 West Genesee street, in the city of Syracuse, was burned. The building extended from Genesee street back a discance of about 160 feet, to the tow-path of the Erie canal, and was from forty-six to fifty feet high. The eastern wall was a foot in thickness, and was independent of the walls adjoining it on either side. The fire was a destructive one, consuming the roof, joists, flooring, timbers, and all of the supports to the wall. After the fire the wall was left standing; it became sprung, and gradually bulged towards the east. It was so situated that the wind struck the rear portion of it with such force that persons had noticed that it swayed under the action of the wind. Immediately adjoining this building, and on the east, was a restaurant largely patronized by the farmers from the country, kept by one Tracy. This building was known as the Clinton block, and in front was of the same height as the building that burned; in the rear, however, it was but twenty-two or twenty-five feet high, at one place near the center only one story high, at which place there was a sky-light, which furnished light to the dining-room below. On the ninth of January following, the rear portion of the wall adjoining the Clinton block fell over, crushing down through the sky-light of the Tracy restaurant, killing the deceased and several others who were there seated at a table dining. The plaintiff, as administrator, brings this action against the city, claiming that the wall was left standing in a dangerous condition, that it was known to the city officials to be so, and that it was their duty to have caused it to be taken down. The court at circuit held that the city is not bound to enter upon private property to ascertain whether or not there are nuisances there, and that the failure of the city to do so cannot be made the foundation of an action. The question thus presented is not free from difficulty. In our examination of the reported cases, we have failed to find any that we regard as controlling. The defendant is a municipal corporation, chartered under an act of the legislature. Title 4, section 4, of its

charter provides: "The common council shall have power to make, establish, abolish, modify, ordain, amend or repeal ordinances, rules, regulations and by-laws for the following purposes: to abate, destroy and remove nuisances; to control and regulate the manner of erecting brick or stone walls for buildings, and the thickness of the same; to prohibit or require the removal of any such as they may deem dangerous to life; to raze or demolish any building or erection which by reason of fire or any cause may become dangerous to human life or health, or may tend to extend a conflagration."

The appellant relies upon the rule as stated by SELDEN, J., in the case of *Weet* v. *The Trustees of the Village of Brockport* (16 N. Y., 161). He says, that "whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases, the contract made with the sovereign power is deemed to inure to the benefit of every individual interested in its performance."

The case under consideration by the learned judge, and to which this rule is applied, was for injuries received by falling through a platform or sidewalk which the defendant was constructing from the end of the bridge across the canal, in a lateral direction to the sidewalk. It had been partially planked over, and then left without any light or guard to prevent persons from falling into the hole so exposed. The injuries were claimed to have been received in the night time, when it was so dark that the hole in the walk could not be seen. This and numerous other authorities to which we have been referred hold that it is the duty of municipal corporations to keep their streets and sidewalks in proper and safe repair, so that the public may pass over and upon the same without injury. The rule as stated by the learned judge, we believe, has been regarded as correct when applied to this class of cases, whenever the question has subsequently arisen in this State.

The right to maintain highways, ferries and bridges, to facilitate communications between different parts of the state, rests in the

government or sovereign power; and those rights can be exercised by others only under grant or authority of the state.

The grant to the defendant of its charter as a municipal corporation, conferred upon it the powers and duties of commissioners of highways; and in accepting and organizing under the charter so granted, it is deemed to have entered into a covenant or agreement to fully perform and discharge all such duties. It has consequently been held that a person may recover as against a municipal corporation, for injuries received without fault on his part, on account of the negligence of the municipality in not keeping its streets and sidewalks in safe and proper repair. And the reason of this holding is based upon the ground that, in accepting the charter, there was an implied covenant or agreement to do and perform its duty in this regard. It is not upon the ground that the duties are ministerial, and not judicial, but upon the ground of the breach of contract. It is not only the duty of the corporation to maintain the surface of the streets in such a condition as to make them safe and proper for the public to pass over, but it is also the duty of the corporation to so maintain them that the public may pass safely, without being injured from falling obstacles. In the case of *Jones* v. *The City of New Haven* (reported in 34 Conn., 1), a dead limb, which was negligently allowed to remain upon a tree in one of the public squares, fell upon and injured a person who was passing along. It was held that the city was liable in damages. So also it was held in the case of *Kiley* v. *The City of Kansas* (reported in 69 Mo., 102). A brick building had burned and the wall, standing upon private property upon the line of the street, was permitted to stand in a dangerous condition for the space of about six weeks, and known by the city authorities to be so. A person was killed by the falling of the wall. It was declared to be a public nuisance and a recovery was permitted.

These authorities we do not regard as in conflict with the doctrine equally as well established, that where the duty devolving upon an individual, body or corporation is judicial in its nature, involving the exercise of judgment and discretion, in the absence of contract, express or implied, no recovery can be had. In the New Haven case, if the dead limb had fallen from a tree standing upon private

property and had injured an individual, it would hardly have been claimed that a recovery could have been had against the city, even though the city had by its charter been given the power to enact ordinances regarding trees upon private property. In the case of *Kiley* v. *The City of Kansas* (*supra*) the court placed its decision upon the ground that the wall standing next to the street in a dangerous condition was a public nuisance, which it was the duty of the city to remove. The court then proceeds to say : "Had this wall been standing in the center of the lot or block belonging to a private person, the city may not have been liable for injuries resulting from its fall. But that would be not because of the particular position of the person injured, but because the wall was not a public nuisance."

In the case of *Wilson* v. *The Mayor, etc., of the City of New York* (1 Denio, 595–599) action was brought to recover damages alleged to have been sustained by reason of the grade and pitch established in paving the street, which prevented water from flowing off from the plaintiff's premises and caused him damages. It was held that he could not recover. The rule as there stated is that " duties which are purely ministerial in their nature are sometimes cast upon officers whose chief functions are judicial. Where this occurs, and the ministerial duty is violated, the officer, although for some purposes a judge, is still civilly responsible for such misconduct. But where the duty alleged to have been violated is purely judicial, a different rule prevails, for no action lies in any case of misconduct or delinquency, however gross, in the performance of judicial duties."

In the case of *Mills* v. *The City of Brooklyn* (32 N. Y., 489) an action was brought for damages occasioned by the overflowing of the plaintiff's premises, for the reason that a sewer which the defendant had constructed was not of sufficient capacity to carry off all of the water during heavy rain storms. It was held that no recovery could be had ; that "the duty of draining the streets and avenues of a city or village is one requiring the exercise of deliberation, judgment and discretion. It cannot, in the nature of things, be so executed that in every single moment every square foot of surface shall be perfectly protected against the consequences of water falling from the clouds upon it."

In the case under consideration, the dangerous wall was standing

on private property, removed from the public street, so that there was no danger of its falling upon the public way. It was not, according to the doctrine promulgated in the case of *Kiley* v. *The City of Kansas* (*supra*), a public nuisance. The charter of the defendant quoted calls for the exercise of sound discretion and judgment. The power given to abate, destroy and remove a nuisance involves the determination of what is a nuisance. The power given to regulate the manner of erecting brick or stone walls for buildings and the thickness of the same, and to prohibit or require the removal of any such as they may deem dangerous to life, involves the determination of what would be proper and sufficient walls, the thickness that they should be, the manner in which they should be constructed, and as to whether or not they are dangerous to life. The power to raze or demolish any building which, by reason of fire or other cause, may become dangerous to human life or health, or as to what would serve to extend a conflagration. All of these powers are judicial in their nature, as much so as would be the determination of when and where a sewer should be located, or of what size it should be constructed, as much so as determining the pitch and grade of a street. And in the absence of contract, express or implied, we are of the opinion that no recovery can be had on account of the failure of the council to raze or demolish a building which becomes dangerous.

We have before stated that the right to maintain highways rests in the government or sovereign power, and that this right can be exercised by others only under grant or authority of the State; and when this grant is made, the person, body or corporation accepting it is deemed to have contracted to keep and maintain such ways in proper and safe condition. This right over highways has always been reserved by the sovereign power, but no such reservation has ever been made in reference to private property. Persons owning the fee of the soil have always been permitted to build and construct such buildings as they saw fit, without grant or license. The sovereign power was not concerned in the question as to whether they were substantially or improperly built, as to whether they were safe or dangerous. True, they must not be constructed so as to be or become public nuisances, or so as to affect the health of the public. But further than that the sovereign power is not concerned. The grant

of the sovereign to the municipal government the power to regulate the manner and material with which a building shall be constructed upon private property, the right to tear down and demolish it in case it is improperly constructed, is a power given to be exercised at the will and discretion of the municipal government. It is not a duty required to be performed by the sovereign power but is a power which the municipality seeks for the protection of its inhabitants.

The appellant cites the cases of *Maxmilian* v. *The Mayor* (62 N. Y., 160) and *Ham* v. *The Mayor* (70 id., 459). Those cases treat upon the doctrine of *respondeat superior*. This court has recently had those cases under consideration in the case of *Bamber* v. *The City of Rochester* (26 Hun, 587). No question was raised by the respondent upon the argument as to the non-liability of the defendant under this doctrine, nor do we consider the doctrine of *respondeat superior* as being in conflict with any of the questions raised or herein discussed.

The conclusion which we have arrived at is that the dangerous wall, being remote from the public street, was not a public nuisance; and that the duties of the common council of the defendant's corporation in the removing of dangerous buildings and walls are judicial in their nature; that such duties are not founded upon any contract, express or implied, but are simply a grant from the sovereign power which is to be exercised according to the best judgment and discretion of the council; that the failure of the defendant to enter upon private property and determine whether or not there was a nuisance or a dangerous wall is not such negligence as would justify a recovery.

SMITH, P. J., concurred.

HARDIN, J.:

I concur in the result reached by HAIGHT, J. There was no request to submit to the jury any question of fact. It is not, therefore, to be understood that the decision now made passes upon the question which would arise in case it appeared or was found as a fact that the defendant willfully omitted to exercise the power conferred upon it to raze or destroy a dangerous and insecure wall or structure upon private property.

Judgment affirmed.