MARTIN CAIN, as Administrator, etc., Appellant, v. THE CITY OF SYRACUSE, Respondent.

By defendant's charter (§ 4, title 4, chap. 63, Laws of 1857) its common council have power to pass ordinances for the raising or demolishing of buildings which, by reason of fire, "may become dangerous." *Held*, that the power conferred was simply one of local legislation, and the failure to exercise it did not make the city liable for injuries caused by the falling of the wall of a building which had become dangerous by reason of a fire.

The charter (§ 5, title 4) also gave to the common council power to compel, by resolution, "the owners or occupants of any wall or building within the city, which may be in a ruinous or unsafe condition, to render the same safe, or to take down or remove the same;" also "to require the

summary removal or abatement of all nuisances;" a penalty was also imposed for the violation of any such resolution. The wall did not front upon the street, but was upon the line between the lot on which the building stood and the adjoining lot. *Held*, that, assuming the common council had authority to pass a specific resolution in regard to this wall, at least in the absence of evidence that that body had notice of its dangerous character, or that its appearance clearly indicated such was its character, the city was not liable for an omission to pass such a resolution.

*Kiley* v. *City of Kansas* (69 Mo. 102), *Parker* v. *Mayor, etc., of Macon* (39 Ga. 725), *People* v. *Corporation of Albany* (11 Wend. 539), *Jones* v. *New Haven* (34 Conn. 1), *Norristown* v. *Moyer* (67 Penn. St. 356), distinguished.

(Argued January 23, 1884; decided February 26, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 25, 1883, which affirmed a judgment in favor of defendant, entered upon an order directing a dismissal of the complaint on trial. (Reported below, 29 Hun, 105.)

This action was brought by plaintiff, as administrator of the estate of Patrick Cain, to recover damages for the death of said intestate, which was alleged to have been caused by defendant's negligence.

In January, 1882, a building situate on Genesee street, in the city of Syracuse, was destroyed by fire; the eastern wall, which ran back from said street one hundred and sixty feet, was left standing; the joists, timbers, and all the supports to the wall were burned; it became sprung and gradually bulged toward the east. About a week after the fire the wall fell upon a building on the lot adjoining on the east, crushing and killing the intestate, who was in the building.

The further material facts appear in the opinion.

*Louis Marshall* for appellant. The liability of a chartered municipal corporation for an improper performance or an omission to perform its duties arises out of its contract with the State created by the acceptance of its charter. (*Conrad* v. *Vil. of Ithaca*, 16 N. Y. 161; *Maximilian* v. *Mayor of N. Y.*, 62 id. 160; *Ham* v. *Mayor of N. Y.*, 70 id. 459; *McCarthy* v.

*City of Syracuse,* 46 id. 194; *Hines* v. *City of Lockport,* 5 Lans. 16; 50 N. Y. 236; *Ensign* v. *Sup'vrs of Livingston Co.,* 25 Hun, 21; *Henley* v. *Mayor of Lyme,* 5 Bingham, 91; 2 C. & F. 331; *Mayor of Lynn* v. *Turner,* Cowper, 86; *Scott* v. *Mayor, etc., of Manchester,* 2 H. & N. 204; *Crowley* v. *Mayor of Sunderland,* 6 id. 564; *Mersey Docks* v. *Gibbs,* L. R., 1 H. of L. C. 93; *Jones* v. *City of New Haven,* 34 Conn. 1.) Where a public body is clothed by statute with power to do an act which the public interest requires to be done, and the means of performance are placed at its disposal, the execution of the power may be insisted on as a duty, although a statute conferring it be only permissive in its terms. (*People* v. *Corporation of Albany,* 11 Wend. 539; *Mayor, etc.,* v. *Furze,* 3 Hill, 612; *Hutson* v. *Mayor, etc.,* 9 N. Y. 163; *People* v. *Sup'vrs of Otsego Co.,* 51 id. 410; *Hines* v. *City of Lockport,* 5 Lans. 16; 50 N. Y. 236; *Jones* v. *New Haven,* 34 Conn. 1; *Maximilian* v. *Mayor,* 62 N. Y. 169, 170; *Parker* v. *Mayor of Macon,* 39 Ga. 725; *People* v. *Albany,* 11 Wend. 542; *Kiley* v. *City of Kansas,* 69 Mo. 102; *Norristown* v. *Moyer,* 67 Penn. St. 356.) A municipal corporation has power to abate a nuisance. (·*Hart* v. *Mayor of Albany,* 9 Wend. 571; *Russell* v. *St. Joseph,* 53 Mo. 290; *Mayor, etc.,* v. *Turner,* Cowper, 86; *People* v.*Albany,* 11 Wend. 543; Wharton on Neg. [2d ed.], § 265; Wood on Nuisances, 780; *Ferguson* v. *City of Salina,* 43 Ala. 398; *Stale* v. *Purse,* 4 McC. 472; *Brower* v. *N. Y.,* 3 Barb. 234; *Kiley* v. *City of Kansas,* 69 Mo. 102; *Heeg* v. *Licht,* 80 N. Y. 519; *Wilson* v. *Mayor of N. Y.,* 1 Denio, 595; *Mills* v. *City of Brooklyn,* 32 N. Y. 487; *Nash* v. *People,* 30 id. 607, 617; *Grant* v. *Erie,* 69 Penn. St. 420.) Where a building becomes dilapidated or unsafe by reason of decay, or the action of the elements, it becomes the duty of the owner or of those having control over the same, to exercise reasonable care in avoiding the occurrence of an accident, and where the building falls by reason of a disregard of such duty, those neglecting it are liable to the person injured for the consequences of their negligence. (*Vincett* v. *Cook,* 6 T. & C. 562; *Mullen* v. *St. John,* 57 N. Y. 567; *Rector of the Church*

*of the Ascension* v. *Buckhart*, 3 Hill, 193; *Parker* v. *City of Macon*, 39 Ga. 725; *Kiley* v. *City of Kansas*, 69 Mo. 102; *Rehberg* v. *Mayor of N. Y.*, 91 N. Y. 137.) The notice of the dangerous character of these walls need not necessarily have been express notice, but was sufficient to charge defendant with liability, if it was constructive. (*Todd* v. *City of Troy*, 61 N. Y. 509; *Requa* v. *City of Rochester*, 45 id. 129; *Rehberg* v. *Mayor of N. Y.*, 91 id. 173.) The court erred in refusing to allow the witness Ritchie to testify that he considered the wall in a dangerous condition, and in striking out the evidence of Dr. Hill that he thought the wall dangerous. (*Vincett* v. *Cook*, 5 T. & C. 562.) Evidence showing that after the accident the common council took charge of the premises and undertook to brace up the remaining walls should have been sustained. (*Morrill* v. *Peck*, 88 N. Y. 398; *Sewell* v. *City of Cohoes*, 75 id. 45; *Pittsburgh* v. *Grier*, 22 Penn. St. 64.)

*M. A. Knapp* for respondent. As to the proprietary or private powers conferred upon it by its charter the city occupies the same relation to third parties as a private corporation. (1 Dillon on Mun. Corp. [3d ed.], §§ 22–27, 66, 67, 94–97, 143, 144, 307–317; *Maximilian* v. *Mayor*, 62 N. Y. 161; *Donovan* v. *B'd of Education*, 85 id 117; *Hafford* v. *New Bedford*, 16 Gray, 297; *Bigelow* v. *Randolph*, 14 id. 541; *Hill* v. *City of Boston*, 122 Mass. 344; *Eastman* v. *Meredith*, 36 N. H. 284; *Wilson* v. *Mayor*, 1 Denio, 599; *Mills* v. *City of Brooklyn*, 32 N. Y. 495; *Carr* v. *Northern Liberties*, 35 Penn. St. 324; *Grant* v. *City of Erie*, 69 id. 420; *Western College* v. *City of Cleveland*, 12 Ohio, 375; *Cole* v. *Trustees of Medina*, 27 Barb. 218; *Rochester W. L. Co.* v. *City of Rochester*, 3 Comst. 463; *Lloyd* v. *Mayor*, 5 N. Y. 369; *West* v. *Trustees Vil. of Brockport*, 16 N. Y. 161; *McCarthy* v. *City of Syracuse*, 46 id. 194.) The power vested in the common council of a municipal corporation to pass and enact by-laws, ordinances, etc., is a power wholly legislative in its character. (Dillon on Mun. Corp., §§ 94, 98, 307–317.) It was wholly within the discretion of defendant's common council,

therefore, acting as a local legislature, to decide whether or not it would make ordinances, by-laws, rules or regulations for the accomplishment of the purposes stated in its charter, though the power to do so is expressly conferred by its charter, and no civil liability can be predicated upon such failure. (*Goodrich* v. *City of Chicago*, 20 Ill. 445; *Terry* v. *City of Milwaukee*, 18 Wis. 83; *Hill* v. *B'd Ald. of the City of Charlotte*, 72 N. C. 55; *Levy* v. *Mayor, etc.*, 1 Sandf. 465; *Griffin* v. *City of N. Y.*, 9 N. Y. 456; *Davis* v. *City Council of Montgomery*, 51 Ala. 139; *Forsyth* v. *Mayor and Council of Atlanta*, 45 Ga. 152.)

FINCH, J. We may admit, without criticism or limitation, most of the appellant's propositions, reserving comment upon them, if need be, for some other occasion, since we shall thus approach more promptly what seems to be the determining question on this appeal. That municipal corporations, accepting chartered powers from the State, and so by their own consent assuming duties not previously imposed, become liable in consideration of the grant for the due exercise of the powers and the proper performance of the duties thus conferred and imposed (*Conrad* v. *Village of Ithaca*, 16 N. Y. 161; *McCarthy* v. *City of Syracuse*, 46 id. 194; *Maxmilian* v. *Mayor, etc.*, 62 id. 160; 20 Am. Rep. 468); that where a public body is clothed by statute with power to do an act which the public interest requires to be done, and the means of performance are placed at its disposal, the execution of the power may become a duty, although the statute conferring it be only permissive in its terms (*People* v. *Albany*, 11 Wend. 539; *People ex rel. Otsego County B'k* v. *Supervisors of Otsego Co.*, 51 N. Y. 401); and that upon the evidence in this case a jury might have found that the wall which fell after the fire and crushed the deceased was in fact, while left standing, dangerous to the adjoining private property and those in its occupation; these three propositions, in their proper application, may be conceded as preliminary to the further inquiry, whether the corporation owed any duty in

respect to the dangerous structure under the city charter, which duty was so absolute, certain and imperative as to found a right of action; or whether such duty was judicial in its character and rested in discretion, for a violation of which no action can be maintained.

Two powers conferred upon the common council by the charter are invoked.    It authorizes them "to establish, publish, modify, ordain, amend or repeal ordinances, rules, regulations, and by-laws" for a large number of purposes, among which is "to raze or demolish any buildings or erections which by reason of fire, or any other cause, may become dangerous to human life or health, or may tend to extend a conflagration." This power is without doubt one of local legislation, to be exercised by the establishment of general rules and regulations under which the desired purposes could be accomplished. Such a power is in its essential elements necessarily discretionary; when it shall be exercised, in what manner exerted, by what sanctions enforced, must inevitably rest in the sound judgment of the legislative board.    It can no more found a civil action that the common council has not legislated, than that, having done so, its ordinance proved ineffective to prevent or redress some private injury.    In *Griffin* v. *Mayor*, etc., (9 N. Y. 459) where an obstruction had been left in the street by an individual, one ground of recovery alleged was an inadequate legislation by the common council, and the court said that its function as applied to the subject was that "of a local legislature" within certain limits, and that the city was not responsible for the want of suitable municipal regulations, or for the manner in which its legislative authority was exercised. But we need not pursue this branch of the inquiry, since the learned counsel for the appellant practically waived reliance upon it, and gathered his argument about the more specific power conferred by another section which authorized action by resolution.    That provided (§ 5) that "the common council shall have power by resolution," among other things, "to compel the owners or occupants of any wall or building within the city, which may be in an unsafe or ruinous condition to

render the same safe, or to take down or remove the same, and to prohibit such erections," and also " to require the summary removal or abatement of all nuisances, or substances likely to become such from any street, lot or building." From this power conferred, the argument derives a corresponding duty; and the measure of the one must necessarily be the measure of the other. No power is here given to the corporation to enter upon private property and abate a private nuisance. It can only act indirectly by putting a command upon the owner, and punishing his disobedience under section six by a fine not exceeding one hundred dollars or imprisonment not exceeding three months. In this respect the power, and therefore the resultant duty, of the corporation is very different from that relating to the city streets, parks, avenues, and buildings, which are within the corporate possession and control, which involve no invasion of private property or private right, and for the negligent care of which the city is alone responsible. The cases relied upon in behalf of the appellant are mainly if not entirely of the latter character. In *Kiley* v. *City of Kansas* (69 Mo. 102; 33 Am. Rep. 491) the court said, "had this wall been standing in the center of a lot or block belonging to a private person the city may not have been liable for injuries resulting from its fall." The wall fronted upon the street menacing the public and was deemed a public nuisance. In this case, too, the common council had legislated and passed an ordinance declaring all buildings and structures dangerous to the public, nuisances. In *Parker* v. *Mayor, etc., of Macon* (39 Ga. 725) the wall stood on the edge of the sidewalk. In *People* v. *Corporation of Albany* (11 Wend. 539) the foul and dirty basin endangered the public health. In *Jones* v. *New Haven* (34 Conn. 1) the trees to be pruned were in the streets and public parks. In *Norristown* v. *Moyer* (67 Penn. St. 356) the rotten liberty pole stood in the street. In all these cases, collected for us by a faithful industry, the general public were interested; the citizens were menaced; the nuisance was public; the corporation could act without danger or question of trespass. While here

the walls threatened only adjoining private property and endangered the lives not of the public, but of the adjoining owners or occupants.

Even in the cases where the subject of action is wholly within the corporate as distinguished from private control, the duty of the city authorities is not always absolute and imperative, but is often discretionary. Power may be given to build sewers. Whether they shall be constructed, in what places and to what extent, is discretionary with the local legislature; while if the work is begun, the duty of proper care, and afterward of necessary repair, becomes an absolute duty. (*Wilson* v. *Mayor, etc.*, 1 Den. 595; *Mills* v. *City of Brooklyn*, 32 N. Y. 497.) If the corporation chooses to build a sidewalk it is not liable for a mistake in the plan out of which injury arises. (*Saulsbury* v. *Village of Ithaca*, 94 N. Y. 27.) Other illustrations might easily be gathered, tending to show that an absolute and imperative duty does not always arise even from a clear and admitted corporate control.

But the question here respects corporate action as affecting private property. We have already observed that the charter abstains from conferring power to invade it, and permits only that indirect action which operates upon the owner through the influence of a penalty. Conceding then that the common council might have passed a resolution directing dangerous walls on private property to be taken down by the owner, or even commanding this specific owner to take down these identical walls, it is evident that the corporate negligence, if any, consisted but of two things, viz.: first, in not discovering that the walls were dangerous; and second, in not ordering the owner by resolution to take them down. A general resolution respecting all dangerous walls, and operating upon a class of cases would come within the scope of that local legislation which we have already described as necessarily and inevitably within the corporate discretion and upon an omission of which no corporate negligence can be predicated. But a specific resolution aimed at the very case before us might have been within the power of the common council.

Assuming that it was, without so deciding, did a duty result so absolute, certain, and imperative, as to found a right of action upon the omission? We must consider the nature and scope of the duty, and in so doing must not be misled by the test which makes permissive words absolute and a command. That test is applicable only to solve a doubt, and determine between a ministerial and judicial duty when such duty may possibly belong to either class, but will not serve to make a duty which is inherently and inevitably discretionary, nevertheless ministerial because the public have an interest in its exercise or the rights of individuals may be affected by it. (*Kelley* v. *City of Milwaukee*, 18 Wis. 85.) The test is useful in a doubtful case, but cannot change the nature of a power when fairly ascertained. What then was the nature and inherent character of a power to order the owner of the walls in question to take them down?

We see at the outset that the power is not absolute but conditional. The walls must be in fact unsafe. The common council cannot act unless they are, and if it orders them to be taken down, must prove the want of safety in order to enforce its resolution. Before these walls fell the question of their safety was an open one. If the common council had gone in a body and examined them and brought experts to their aid, it is not certain or even probable, that they would have judged them unsafe. We have read the evidence carefully, and it has left the conviction that any prudent and skillful man might have examined the walls in question and without negligence adjudged them not dangerous. The adjoining owner showed no fear of them. Ritchie, who built them, indicated none. Hoffman, who was a builder and appraised the damages, did not think there was any immediate danger. Hayes thought it was all right. Connelly had observed no movement or swaying of the wall. Mason, another builder, could not be made to say it was unsafe. These were all plaintiff's witnesses, and while others testified to some swaying or movement of the walls, the whole evidence shows that a prudent man after examination might have deemed the wall not

unsafe.   That the members of the common council knew of the fire and had seen the ruins is a reasonable supposition. That they passed no resolution ordering the removal of the wall may indicate an error of judgment, but is far from proving a negligent omission.   The adjoining owner had no absolute right to a contrary judgment on their part.   The general public were not interested in the result.   Whether the resolution should be passed and enforced by consequent penalties lay in the discretion of the board and for an error of judgment the corporation is not liable.

There was no such notice of the dangerous character of this wall as to make an omission to act, negligence.   Nobody asserted danger to the board or its officers.   Nothing in the condition of the wall so warned of its unsafety as to charge the common council with knowledge of the fact.   Assuming that they had all the notice which would have resulted from a personal examination, it was no more than that, and was not notice of unsafety or danger but at most only of a possibility or a doubt.   We have no right to assume that they had notice enough to make it their duty to examine, and were negligent for not making an investigation which was the final position of the appellant on the argument.   They were not bound to consult experts.   If they had done so the experts would probably have differed, as usual.   No proof shows that every member of the board did not see this wall after the fire, and form a judgment that it was not so unsafe as to warrant corporate action against the owner.   That they did not act does not prove negligence in a case where not acting is consistent both with knowledge and ordinary prudence.   If there was error, therefore, it was a mistake of judgment.   They had no right to act upon a doubt, or a fear, or a bare possibility, when the public were not imperilled, and only private rights were to be protected. Those rights were already shielded by the law.   The adjoining owner could have pulled down the wall if he could have shown it to have been a nuisance.   He had and still has his action for the resultant injury if it flowed from a culpable negligence. But neither he nor the plaintiff had an absolute right to the

interference of the common council of the city. A different rule would almost make every municipal corporation the responsible guarantor to the individual citizen of the absolute safety of every wall, building and structure standing within the corporate limits.

The judgment should be affirmed, with costs.

All concur, except RUGER, Ch. J., not sitting.

Judgment affirmed.