Haight, J.
This action was brought to recover damages resulting from the death of Martin W. Bond through the alleged negligence of the defendants. The appellants, *830 Smith and Davis, are the owners of a four story brick' building on the east side of Main street, in the city of Duff alo, running through to Webster’s alley. This alley runs southerly from Seneca street along the rear of the buildings fronting on Main street and is a cul-de-sac. The buildings on each side of the appellants’ store are built out to the line of the alley, but the rear wall of the appellants’ building is about three feet from the alley. Between the rear wall and the alley there is an open area about three feet wide and eight feet. deep. The plaintiff’s intestate was employed as a detective and watchman by Watts & Curtin’s Detective Agency, and it was his duty as such watchman to go through Webster’s alley at least once an hour during the night and examine the doors and windows of buildings owned or occupied by subscribers to that agency to see that everything was right. That the defendants were not subscribers to the agency and it was not his duty to examine their store. There were stores, however, on either side which it was his duty to examine and watch. Between twelve and one o’clock A. M., on the lHh day of September, 1884, he was found lying on his back in the northerly end of the area with his head to the south. No one was present or saw him fall into the area. He was taken out and carried to his home where he died on the seventh day of October from injuries received in falling into the area.
It is contended on the part of the appellants that the plaintiff ought not to recover herein for the reason that the evidence does not establish that her intestate was free from contributory negligence which caused the injury and that it was error on the part of the court to refuse their motion for a non-suit. In support of this -contention, the general rule is invoked that a person in order to recover for a personal injury must show himself free from fault and negligence. Undoubtedly this is the general rule, and the burden of establishing these facts rests-upon the plaintiff. When a person is approaching a known and visible place of danger, it is his duty to make a vigilant use of his senses in order to apprehend and avoid the danger, and when the circumstances point just as much to» the negligence of the deceased as to its absence or point in neither direction, the plaintiff should be non-suited, and that the presumption that every person will take care of himself from regard to his own life and safety can not take the place of proof, for the reason that persons exposed to danger will frequently forego the ordinary precautions of safety. But, on the other hand, it was admitted by the appellant Bassett that Webster’s alley was a public alley. The evidence presented upon the trial and the records of the common council of the village of Buffalo, which were *831 presented to the general term upon the argument of this appeal, and which we admit, we think establishes the fact that it was a public alley and had been for upwards of fifty years, and the rule is that a person travelling upon a high way is, as a general rule, justified in assuming that it is safe, and where he is injured in consequence of a defect therein, the fact that he had previous knowledge of the existence of the fact does not per se establish negligence on his part. Weed v. Village of Ballston Spa, 76 N. Y , 329
The public are entitled to an unobstructed passage upon the streets, including the sidewalks of a city, and a person obstructing the same or digging pits therein, producing a nuisance, may be held liable for damages resulting therefrom. Clifford v. Dam, 81 N. Y., 52.
But it is" claimed that the area in the rear of the defendant’s building was not within the street and was not a public nuisance. As we have seen, the area was in the rear of the building and came up to the line of the street or alley. The only guard was a stone wall that extended six or seven inches up above the surface of the alley, just high enough so that a person in a dark night could stub a foot against it and fall over into the area. It is not necessary that the pit or obstruction should be in the street in order to be a public nuisance. That which menaced or put in jeopardy citizens who pass along the public way is a public nuisance. Cain v. City of Syracuse, 29 Hun, 105; S. C., 95 N. Y., 83-89.
As for instance, a wall of a building standing upon private lands, but next to the street, in a dangerous condition, so as to put in jeopardy those who pass along the street is a public' nuisance. Riley v. City of Kansas, 69 Mo., 102.
So also is a dead limb of a tree extending over the public way in a condition liable to fall and injure persons a public nuisance. Jones v. City of New Haven, 34 Conn., 1
So that in case this area was so near to the alley as to endanger persons passing along the alley it was a public nuisance. The question as to whether or not it was a nuisance was properly submitted to the jury, and their verdict upon the question is conclusive.
In the case under consideration, it was the duty of Bond to pass through this alley every hour during the night. The alley was a paved alley but fifteen feet wide. On either side there were brick buildings from four to six stories high. There was a public lamp in the alley, but the evidence tends to show that it was not lighted on the night in question. It was his duty to examine the doors and windows of buildings on either side of the area in question. He was there in the discharge of his duty and was subse *832 quently found in the bottom of this area. It does not appear whether or not he knew of its prior existence, but the fact that he had passed through the alley on numerous occasions on other nights, may lead to the inference that he knew of it. But, even suppose that he did. Its precise location may not have been easily discernible in the darkness, and although exercising ordinary caution, his foot may have hit against the wan surrounding the area upon the line of the alley, causing him to stumble and fall in. At least, we think the evidence is such as to justify the jury in drawing this inference. McGuire v. Spence, 91 N. Y., 303; Beck v. Carter, 68 id., 283.
It is claimed on the part of the appellants, Smith & Davis, that even though the defendant Bassett is liable, that they are not. Bassett had been the owner of these premises, and had occupied them for some twenty-eight years. In December, 1881, he sold and conveyed them to the defendants, Smith & Davis, but continued in the use and occupation as their tenant until after the death of Bond. The lease provided that Bassett, the lessee, should keep the premises and every part thereof in good repair during the term, and leave the same in as good condition as when taken, reasonable use and wear thereof excepted, and it provided that the lessors, Smith & Davis, in person or by agent, should be permitted to enter the premises at all reasonable times of the day to examine the same to make such repairs therein as they shall think requisite. The area was made many years before the accident for the benefit and convenience of the owners and occupants of the building. The defendants, Smith & Davis, testified that they did not know of its existence until the accident in question. It appeared from the evidence that they were residents of the city of Buffalo, and that their office was nearly opposite the building in question, upon Main street; that they had passed this building a great many times and liad been in it, and that they had been the owners of it for nearly three years. We, consequently, think that they were chargeable with constructive notice if the jury did not find that they had actual notice. We are aware that in the Conhocton Stone Road v. The Buffalo, New York and Erie Railroad Company (51 N. Y., 573), it was held that in order to maintain an action for damages resulting from a nuisance upon the defendant’s land, where such nuisance was erected by a previous owner before conveyance to the defendants, it is necessary to show that before the commencement of the action he had notice or knowledge of the existence of the nuisance. In that case the court does not discuss the question of constructive notice.
And, again, in the case of Wolf v. Kilpatrick (101 N. *833 Y., 146), it was held that the defendants, who were owners ■of the premises, which they had leased to a tenant who built vaults under the sidewalk, with a coal hole through the walk, which had been broken by the wrongful act of a .stranger, and that because thereof the plaintiff stepped upon it and fell, that the defendants were not liable for the reason that they had no notice. It will be observed -in this case that the vault and coal hole through the sidewalk was constructed by the tenant of the defendants, and that the tenants had entire and exclusive control over the premises. The court says in reference to the nuisance, that the defendants, the owners, could not be deemed to have ■suffered it to continue if they had no knowledge, actual or •constructive, of its existence. So that we are led to infer that had they had constructive notice a different result might háve been reached.
The nuisance in the present case was a public nuisance. The defendants, Smith & Davis, reserved the right under the lease to enter the premises and to make necessary repairs. They had been the owners of these premises for nearly three years, and it was a duty that they owed to the public to abate any nuisance that endangered the life or limb of persons passing along the alley. It was an open visible area that must have been seen and known by them had they visited the end of the premises abutting upon the alley. They should consequently be chargeable with constructive notice.
As to the defendant Bassett, there is no pretense but that he knew of the condition of the area and had for a number of years. He was in the actual occupancy of the building •and had the power under his lease to repair and protect the area. There is evidence also tending to show that he knew of the dangerous character of the place, and that another policeman some years before had fallen into the same place and broken a shoulder.
The defendant’s counsel requested the court to charge the jury that if the plaintiff’s intestate, Bond, knew of the existence of this area, or might, with reasonable and proper use of his faculties, know of ths existence of it, he was bound to take knowledge thereof and to use proper care and diligence to avoid it. The court remarked: “I have charged upon that ■subject and I decline to alter my charge, or to change it in respect to cases of abstract proof.” Counsel for the defend•ants excepted to the refusal to so charge. The court did charge the jury in reference to the contributory negligence of the deceased, that it was claimed by the defendants that Bond knew of the existence of the hole and had abundant opportunity to know about it, and that he should have kept *834 a lookout for it, and if he fell into it he must have fallen into it carelessly, and that there was no evidence that betook proper care of himself to avoid the falling in; whilst on the part of the plaintiff it was claimed that he was lawfully in the alley, and he had the right to assume that the alley was all right; that he had no charge of the particular building in front of which the area was constructed; that it was no part of his duty to look for holes, and it does not appear that his attention was ever, directly called to it, although hetravelled there nights a great many times. Whether he-did or not, it was not his duty to bear in mind whether or not it was there. That the night was dark and there was no light, and that he being lawfully upon the ground, that the jury had the right to determine that he was not guilty of negligence. The court, after thus stating the claims of the respective parties, stated that he left the question to the jury to determine whether or not the deceased exercised diligence and whether he was guilty of negligence. As we understand the .court, it stated the claims of the respective parties as presenting the law of the case, and that it was for the jury to determine which were correct as to the facts. That the negligence of Bond depended upon such determination.
But again, we are inclined to the opinion that the request was broader than the defendants were entitled to under the authorities of Irvine v. Wood (51 N. Y., 224), McGuire v. Spence (91 N. Y., 303) and Clifford v. Dam (81 N. Y., 52).
Other exceptions appear in the case, but none which we deem it necessary to here discuss.
The judgment and order should be affirmed.
Smith, P. J., and Bradley, J., concur.