ments. It is to us apparent that the compensation for counsel as fixed at Special Term includes, very largely, remuneration for the attempt of the receiver to continue to exercise dominion over the assets of the bankrupt estate after the ending of his powers and duties in regard thereto.

The appellant argues that the question of receiver's compensation and allowances for counsel fees should not be considered by this court on the receiver's accounting, but should be left entirely to the bankruptcy court for determination without any action by this court. The theory of this contention is that no order made by this court can bind the bankruptcy court in its administration of the assets of the bankrupt estate. If this be so, it is no reason why this court should refrain from settling the accounts of its own officer, and proceeding in all the usual incidents of an accounting. For it is not to be assumed that the bankruptcy court, which, through its officer, came into this court and secured equitable relief for the benefit of the bankrupt's creditors, will ignore the action of this court in ascertaining and adjusting the proper expenditures and allowances entailed in this court in the process of affording the relief sought by the trustee in bankruptcy.

The order should be affirmed, in so far as it settles the account of the receiver and fixes his commissions; it should be modified, so far as it fixes the additional compensation of the receiver at $200, by reducing that compensation to the sum of $100; and it should be modified, further, by reducing the allowance for counsel fee to the sum of $250, exclusive of disbursements, without costs of this appeal. Settle order before the Presiding Justice.

---

In re LEONARD.

In re MAJOR et al.

(No. 7385.)

(Supreme Court, Appellate Division, First Department. June 4, 1915.)

1. WILLS ⟸671—CONSTRUCTION—TESTAMENTARY TRUSTS.

Testator directed that all his estate be sold at public auction and the proceeds divided between his nephews and nieces, naming them, providing, however, that the shares of the nieces should be invested in mortgages and the interest thereon of the several shares be paid them semiannually, and, in case of any of them dying without issue, that her share should be divided equally among her brothers and sisters. *Held*, that the bequests to the nieces were in trust to receive the income of the funds for life, since the direction to the executors to invest and pay over imposed upon them continuously active duties, so that they were to be deemed trustees for the performance of such duties for life, because the bequest over of her share upon the death of any niece limited the niece's interest to the income of her share for life.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1577, 1578, 1586; Dec. Dig. ⟸671.]

2. WILLS ⟸687—CONSTRUCTION—ESTATES CREATED—DISPOSITION OVER OF TRUST FUNDS.

Testator left equal funds to his nieces in trust, the income to be paid them for life. providing that, upon death of any niece without issue or

brothers or sisters, then her share should revert to the general fund of the estate, to be divided equally among testator's remaining nephews and nieces. A niece died unmarried, leaving no issue and no brothers or sisters. *Held*, that such niece's share went to the nephews and nieces of the testator living at such niece's death, since, where the only words of gift are found in a direction to divide or pay at a future time, the gift is future and contingent, while, where the gift is of money and the direction to convert absolute, a legacy given to a class vests in those who answer the description and are capable of taking at the time of distribution.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1638–1643; Dec. Dig. ⬤⟿687.]

3. WILLS ⬤⟿534—CONSTRUCTION—EXCLUSION FROM CLASS.
　　Where testator provided that the share of any niece dying without issue or brothers or sisters should revert to the "general fund," to be divided among testator's remaining nephews and nieces, from such class were excluded nephews whom testator had elsewhere directed should receive no part of the "general fund" or residuary estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1153–1156; Dec. Dig. ⬤⟿534.]

4. WILLS ⬤⟿440—CONSTRUCTION—INTENT OF TESTATOR.
　　The intention of the testator, the cardinal guide in construing a will, is to be drawn from the whole instrument, and is not to be distorted by the injudicious use of punctuation, or by the substitution for some perfectly apt word of one less so, provided its meaning can be reasonably found.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 956; Dec. Dig. ⬤⟿440.]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of Ellen Leonard, as administratrix with the will annexed of Bryan McCahill, deceased. From a decree of the surrogate, Katherine Major, as administratrix with the will annexed of Annie V. McMahon, deceased, and others, appeal. Decree modified and affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Weed, Henry & Meyers, of New York City (John W. Weed, of New York City, of counsel, and Charles Meyers, of New York City, on the brief), for appellants Major and others.

Clifford C. Roberts, of New York City (Frederic N. Gilbert, of New York City, of counsel), for appellants Leonard and others.

C. H. & J. A. Young, of New York City (Albert Ritchie, of New York City, of counsel), for appellant and respondent McCahill.

John V. Judge, of New York City, for respondents McCahill and others.

Gilbert W. Minor, of New York City, for respondent Griggs.

Adlerman & Adlerman (Abraham Finelite, of New York City, of counsel), for Edmund S. Dorian.

John P. O'Brien, of New York City, special guardian for infant respondent.

CLARKE, J. Bryan McCahill made his last will and·testament on the 30th day of November, 1870, died on the 14th of January, 1871,

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and his will was admitted to probate December 4th of the same year. The principal questions presented arise under the eleventh clause of said will and with respect to the share of his estate therein bequeathed to Annie McMahon.

By the will he gave to his wife the house and lot 145 East Forty-Ninth street, together with the household furniture, etc., contained therein, during her natural life, and on her decease the proceeds arising from the sale of the said house and furniture to be divided equally between his nephews and nieces thereinafter named, the survivor of survivors of them. He also provided for an annuity to his widow of $1,200 per annum. He then made certain specific bequests. He then gave to his executors, and survivor or survivors of them, the sum of $1,500 per annum during the lifetime of his executors James Brady and Thomas J. McCahill and the survivors of them, in trust, nevertheless, for them to pay for the education of young men who wish to study for the Catholic priesthood, such young men to be selected by the executors.

"Eleventh.—Immediately after my decease I direct that all my real and personal estate be sold at public auction by my executors hereinafter named and after paying the legacies above mentioned, the proceeds thereof be divided equally between my nephews and nieces, etc., Ellen McCahill and Mary McCahill, the children of my brother James, deceased; Mary McMahon, Kate McMahon, Margaret McMahon, Philip McMahon, Jr., Anne McMahon and Ellen McMahon, children of my sister Margaret McMahon; Thomas J. McCahill, Margaret T. Mullane, Bernard F. McCahill, Terence J. McCahill and Ellen McCahill, children of my brother Terence, deceased; James Brady and Terence Brady, children of my sister Rose Brady; James McCahill, son of my brother Patrick, deceased, in equal shares, share and share alike. My nephew Terence Brady, being now absent and should he remain so absent for the next five years his share is to go to his brother James Brady. The shares, however, of my nieces, Ellen McCahill, now Ellen Leonard; Mary McCahill, now Mary Curtin; Mary McMahon, now Mary Dorian; Kate McMahon, Margaret McMahon, Annie McMahon and Ellen McMahon, I direct my executors to invest in bond and mortgage, and the interest thereon of their several shares to be paid them semiannually, and in case of any of the above nieces dying without issue, then her share shall be divided equally among her brothers and sisters, and in case of the death of any of them leaving issue, the interest on her share shall be divided equally between her said children, and upon their attaining the age of twenty-one years the principal shall in the same manner be divided equally between them. Should any of my nieces, however, die without leaving issue or brothers and sisters, then her share is to revert to the general fund of my estate, to be divided equally among my remaining nephews and nieces. I direct, and it is my will, however, that my nephew, Bryan McCahill, shall not receive any share of my estate, real or personal, at my decease, he having already received what I consider his just share of the same.

"Twelfth.—I further direct that my nephew Peter Brady, shall have no part of my estate, except that I direct my executors to pay over or apply from the general fund in their hands Seven Dollars a week for his support and maintenance." Lastly, he appointed as his executors Rev. James McMahon, Thomas J. McCahill and James Brady, "with power to sell and dispose of all my real and personal estate, and further to act as the guardians and guardians ad item of all my nieces and nephews and the offspring of my nieces above named during their minority."

This will has been the subject of two former decisions in the Surrogate's Court, one in 1873 and one in 1899, and one by the Supreme Court in 1878. By the decree of 1873 made by Surrogate Hutchins on

an accounting, it was provided that the executors invest the sum of $17,100 to provide the annuity of $1,200 for the widow, and the sum of $21,300, known as the "Priesthood Fund," to produce the annuity of $1,500. It was also provided that the executors divide all the residue into 16 equal shares, and that they pay over one of said shares to each of the following persons, that is to say: Philip McMahon, Jr., Thomas J. McCahill, Ellen McCahill, Margaret J. Mullane, Bernard F. McCahill, Terence John McCahill, James Brady, Terence Brady, and James McCahill—and that as respects the others of said shares the said executors are directed to invest the same, respectively, in bonds and mortgages of real estate, and apply the interest and income therefrom as follows, viz.: To Ellen Leonard, Mary Curtin, Mary Dorian, Kate McMahon, Ellen McMahon, now Ellen Kellaher, Rose Ann McMahon, and Margaret McMahon, Jr., each, one of said shares during their respective lives, and on their deaths respectively, that they pay the share of the party so dying with the accumulations, if any, to her lawful issue, should she leave issue her surviving, but, should she leave no issue her surviving, then to her brothers and sisters then living and the descendants of any deceased brothers or sisters who shall have died leaving children, according to the statute of distributions, as in cases of intestacy.

The widow died in 1876. Her death left in the hands of the executors for distribution the residence and household furniture, which realized on the sale thereof $9,500, and the trust fund of $17,100 created to produce her annuity. An action was thereupon brought in the Supreme Court by the executors against the 16 nieces and nephews or their representatives. The relief demanded was as follows: (1) Whether the distribution of the proceeds of sale of said house and lot and furniture is to be confined to such of the said nephews and nieces of the said testator who survived the said Bridget McCahill, or whether the children or other representatives of such of the said nephews and nieces who died before the said Bridget McCahill are entitled to share in said proceeds and if so in what shares or proportions. (2) Whether the fund set apart to create the annuity for the said Bridget McCahill became on her death part of the residuary estate to be paid over to the nephews and nieces, and, if to them, is the distribution confined to the nephews and nieces who survived the widow, or do the children and representatives of such who died before the widow take any, and what, portion thereof, or is the same to be distributed among the next of kin of the said testator as in case of intestacy. (3) Whether the shares of either of said funds of the said nieces named in said will, who are therein directed to be paid only the interest or income, can now be paid to them, or whether these plaintiffs are required to invest their shares and pay over the interest to them for life, and on their death to pay over the principal as directed by said will.

The court found as conclusion of law that the trust created by the ninth clause was a valid trust, and that the principal on the death of the survivor of the said plaintiffs be paid over as directed by the eleventh clause of the said will; that the proceeds of sale of said house and lot and furniture and the said sum invested to produce the annuity

for the widow are to be distributed and paid over by the said plaintiffs to the nephews and nieces of the testator as follows: One share thereof to each of the following parties (naming ten), and that the shares of the minor children of the deceased nephews and nieces as follows: The children of Mary Curtin (naming them) have each one-third of one share; that the children of Margaret T. Mullane (naming them) have each one-sixth part of one share; that the children of Mary Dorian (naming them) have each one-fifth of one share, and that the daughter of Philip McMahon (naming her), one share, is to be retained by the said plaintiffs and invested for the use of said minors and on their attaining the age of 21 paid over to them. The judgment followed the decision, and it will be noted that it directed that the fund be divided into fifteen shares; no share being set aside for Kate McMahon, who had died intermediate to the testator and his widow without leaving issue.

There is nothing to indicate upon what theory the distribution was made, whether (1) as part of the residuary estate, or (2) as provided in paragraph second, which provided that:

"On her decease the proceeds arising from the sale of the house and furniture be divided equally between my nephews and nieces hereinafter named, the survivor or survivors of them."

It seems clear that the court considered that the annuity trust fund should be distributed in the same manner as provided in paragraph second for the disposition of the proceeds of the house and furniture, and that it treated the words "survivor or survivors" as referring to the nieces who survived the testator, and not those who survived the widow, for the judgment gave to each niece, or her issue, his or her share absolutely, which could not have been done, had the property been disposed of under the eleventh article, without overruling the decree of 1873 of the Surrogate's Court, which provided that the shares of the seven nieces be held and invested. It is not reasonable to suppose that there was any intention of overruling the surrogate's decree sub silentio. The judgment must therefore be held to have disposed of the matters passed on under the second paragraph. I do not think that that judgment is res adjudicata, or of any force and effect, upon the question now before the court. The questions there considered arose under different clauses of the will and do not seem to me to touch the question here involved.

In 1899 Margaret McMahon, one of the seven nieces for whose benefit the sum of $9,899.11 was to have been invested during her life, as provided for by the eleventh clause of the will, had died. Prior to her death a brother and sister had died leaving no children. She left her surviving her sister Annie V. McMahon, five children of a deceased sister, Ellen Kellaher, two children of Mary Dorian, and two grandchildren, the children of deceased children of Mary Dorian, all of whom were represented in the proceedings. Margaret McMahon died unmarried, and left no issue her surviving. The question as to what disposition should be made of her share was therefore before the court. Matter of McCahill, 29 Misc. Rep. 450, 61 N. Y. Supp. 1071. Surrogate Varnum said:

"It appears that one of these nieces died without issue, leaving one sister her surviving. The question raised is whether this sister is alone entitled to the share of the deceased niece, or whether the children of deceased brothers and sisters are also entitled to participate therein. * * * The attention of the court is now called to a decree entered in this estate in the year 1873, in an accounting, under the terms of which the executors are directed to make distribution of the shares in question, after the death of the respective life beneficiaries, by paying the share of any niece so dying to her lawful issue; but if she leave no issue her surviving, then to her living brothers and sisters, and the descendants of any deceased brothers or sisters. It is contended that this direction is in the nature of a final adjudication, and that no other construction can be placed upon the will. * * * It is a well-settled doctrine that, upon an accounting, the surrogate has jurisdiction to construe a will when such construction is necessary to enable distribution to be made. But, where no question of distribution is before the court, any direction fixing the future attitude of executors or trustees, or pointing out the manner in which the funds should be distributed by them in the happening of a remote event, is not germane to the proceeding, and is, therefore, entirely superfluous so far as the making of a complete decree is concerned. Such an unsought-for construction does not stand in the way of procuring further or other directions when the question of distribution becomes a present one, and the court has the right to look upon the same as null and inoperative [citing cases]. Under the authorities, I am not, therefore, bound by the opinion expressed in the former decree."

He therefore held that the surviving sister, Annie V. McMahon, was entitled to the fund. The Supreme Court judgment was not alluded to, which tends to show that it was not regarded as res adjudicata at that time. Each of the seven trusts for the seven nieces has now terminated, and the trust fund distributed, except the Ellen Leonard fund and the Annie V. McMahon fund. Ellen Leonard is living. Annie V. McMahon died unmarried, February 19, 1911, without issue, leaving a will of which Kate Kellaher Major is administratrix with will annexed. She left no brothers or sisters her surviving. But of the other nephews and nieces named in the eleventh clause of the will there survived her Ellen McCahill, Terence J. McCahill, Ellen McCahill Leonard, and Thomas J. McCahill. The question before the court is: Who are the persons entitled to the Annie V. McMahon fund? The surrogate in his first decision herein said:

"In regard to the Annie V. McMahon trust, amounting to $9,207.33, created by the eleventh clause of the will, the executors, in obedience to the testator's command, converted his estate into money. The personal property thus bequeathed vested in the legatee at the testator's death, and thereafter became her sole property. Annie V. McMahon having left a will, her interest in the fund named for her and her share in the proceeds pass by her will."

But in his second opinion he said, after reargument:

"I am now reasonably assured that the construction which I ought to give to the will is as follows: Under the terms of the eleventh paragraph of the testator's will each of the sixteen nephews and nieces first named therein, except those whose legacies were left in trust, took a vested interest in their share at the time of the death of the decedent. The shares of the seven nieces, however, were to be held in trust [quoting the will]. The share of Annie McMahon, she having died without issue or brothers or sisters, falls into the residuary estate. The residuary estate should now be distributed equally to the nephews and nieces who took a vested interest, as above stated, or, if dead, to their next of kin or representatives, and to the trustees of each of the several nieces for whom trusts were created, or to the issue or brothers

or sisters, as the case may be, of such of the cestuis que trustent as are dead, according to the terms of the said eleventh paragraph of the will; and in case of the death of any of such cestuis que trustent without issue or brothers or sisters, their share to go into the residuary estate."

[1] I am unable to agree with the conclusion of the learned surrogate. I think this is a perfectly plain will. The testator excepted two nephews by name from taking any part of the estate disposed of. The testator by the eleventh clause vested nine of the shares of his estate in his enumerated nephews and nieces. Such shares being vested at the time of his death, of course those shares descended. But in regard to the shares left to the seven enumerated nieces, he left clearly defined separate trust estates, which determined upon the death of the cestuis que trustent. Each of the seven sisters is a beneficiary. Each of the seven shares is a res. The direction to the executors to invest the share in bond and mortgage, and to pay over the income semiannually, imposed upon them continuously active duties both of investments and of payment over of the income.

"This duty was imposed upon them as executors. It was an active duty, and such as usually pertains to the office of trustees, and such they must be deemed to be for the performance of these duties." Matter of Dewey, 153 N. Y. 63, 46 N. E. 1039.

"The duty of investing and administering the share in question, it is true, is imposed upon persons who are designated as executors, rather than trustees; but it is a very familiar rule that the duties imposed upon a person, rather than the name applied to him in the will, should measure his office and position, and that where the duties of a trustee are imposed upon a person he will be regarded as a trustee, rather than an executor. Tobias v. Ketchum, 32 N. Y. 319, 327; Ward v. Ward, 105 N. Y. 68, 74 [11 N. E. 373]." Mee v. Gordon, 187 N. Y. 400, 80 N. E. 353, 116 Am. St. Rep. 613, 10 Ann. Cas. 172.

The bequest over upon the death of each of the seven nieces who have the income limits their interest in their shares to an interest in the income for life. All the elements of an expressed trust for personal property are thus present. Where a trust is in fact created, it will be called so by the courts, though not termed such by the testator. When all the elements of a trust are present, a trust will be implied, especially when, as here, no illegal suspension will be created and no injustice done. Close v. Farmers' Loan & Trust Co., 195 N. Y. 92, 87 N. E. 1005.

[2] I think Surrogate Varnum was absolutely right in disposing of the estate of Margaret, decreeing that it all went to Annie, her sole surviving sister. Now Annie has died. She left no issue, she left no brothers or sisters, and this clause of the will, therefore, is applicable:

"Should any of my nieces, however, die without leaving issue, or brothers or sisters then her share is to revert to the general fund of my estate to be divided equally among my remaining nephews and nieces."

It seems to me that by "remaining nephews and nieces" testator meant surviving nephews and nieces; that he had in mind especially the people he knew. There was no direct gift over of the principal of the trust estate, but instead a direction to divide it on the death of the cestui que trust. This direction to divide was to classes—first, to issue; second, to brothers and sisters; and, third, in the absence of brothers and

sisters, or issue, to a class to be determined upon the happening of that event, and that class was the surviving—or, as he has put it, remaining —nephews and nieces.

"Where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. Bisson v. W. S. R. R. Co., 143 N. Y. 125 [38 N. E. 104]; Goebel v. Wolf, 113 N. Y. 405–411 [21 N. E. 388, 10 Am. St. Rep. 464]; Teed v. Morton, 60 N. Y. 506; In re Smith, 131 N. Y. 239, 247 [30 N. W. 130, 27 Am. 'St. Rep. 586]. In such cases the gift is contingent upon survivorship." 'Matter of Baer, 147 N. Y. 348, 41 N. E. 702.

"In the first place, it will be noted that there is no direct gift of the principal of the trust estate, but instead a direction to divide it on the death of the testator's widow.  *  *  *  Two well-known rules of construction are applicable to this provision: First. Where the only words of gift are found in the direction to divide or pay at a future time the gift is future, not immediate—contingent, and not vested. Matter of Baer, 147 N. Y. 348, 354 [41 N. E. 702]; Delafield v. Shipman, 103 N. Y. 464 [9 N. E. 184]; Delaney v. McCormack, 88 N. Y. 174, 175. Second. Where the gift is of money, and the direction to convert the estate is absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the time of the distribution." Matter of Crane, 164 N. Y. 71, 58 N. E. 47.

"The rule to be applied in construing the will in this state is that where a gift arises from a direction to divide or convey the trust property among a specified class of persons, and such division or conveyance is contingent and dependent upon the happening of one or more uncertain events, the gift does not vest until the time for distribution or conveyance arises." Salter v. Drowne, 205 N. Y. 204, 98 N. E. 401.

[3] The language, "then her share is to revert to the general fund of my estate to be divided equally among my remaining nephews and nieces," means, it seems to me, that, as testator had excluded two of his nephews from participating in the distribution of his estate, he intended still to exclude them in case one of the seven nieces died without issue, or brothers, or sisters; that then her share should be divided as he had provided that the general fund, or residuary of the estate, should be divided, among his nephews and nieces remaining alive at the time, excluding the two nephews.

The will is inartificially drawn. It created trust estates in one paragraph without using the technical terms, while in two other paragraphs testator said, "in trust nevertheless." He uses "issue" and "offspring" interchangeably. He nowhere uses the word "residue," but employs "general fund" in its stead in two separate clauses of the will. He uses the terms "survivor," "leaving," and "remainder" to express the same meaning.

[4] We are from the will itself to obtain the intent of the testator. "The intent of the testatrix will not be defeated by the injudicious use of punctuation, or by the substitution for some perfectly apt word of one less so, providing her meaning can reasonably be found." Mee v. Gordon, 187 N. Y. 400–405, 80 N. E. 353 (116 Am. St. Rep. 613, 10 Ann. Cas. 172).

We are satisfied that testator intended that, on the happening of the contingency here presented, the share of the niece should be divided between the surviving nephews and nieces, excluding the two already in terms debarred from taking. The findings and decree should be

modified accordingly. In other respects we agree with the surrogate.

The decree should be modified as indicated, and, as modified, affirmed, with costs to Ellen Leonard et al., Thomas J. McCahill, executor, etc., and the guardian ad litem for the infant Francis P. Brady, payable out of the estate. All concur.

---

NEW YORK COUNTY NAT. BANK v. WOOD et al. (No. 7302.)

(Supreme Court, Appellate Division, First Department. June 4, 1915.)

1. MECHANICS' LIENS ⬁149—NOTICE—SUFFICIENCY.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 256–259; Dec. Dig. ⬁149.]

2. MECHANICS' LIENS ⬁114—PRIORITIES—ASSIGNMENT.

An assignment by the general contractor of the amount due him for constructing a building is superior to a mechanic's lien, notice of which was not filed until after the filing of the assignment.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 149; Dec. Dig. ⬁114.]

3. RECORDS ⬁19—FILING WITH OFFICER—ERRONEOUS REJECTION.

Where the assignee of a building contractor left his assignment with the county clerk for filing, but the latter refused to accept it on the ground that it was insufficient, the filing dates from the time it was left with the clerk, since the failure of a public officer to do his duty in filing a paper cannot impair the rights of one who has duly delivered it to such officer for filing.

[Ed. Note.—For other cases, see Records, Cent. Dig. § 44; Dec. Dig. ⬁19.]

4. PRINCIPAL AND AGENT ⬁100—ACTS OF AGENT—SCOPE OF AUTHORITY.

The fact that the assignee's agent received the assignment back from the clerk does not affect the assignee's priority, since the agent's authority ceased when he had delivered the instrument to the clerk for filing.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 262–273, 345, 364, 368–373; Dec. Dig. ⬁100.]